IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHARD D. STEWART,               )
      Plaintiff,                   )
                                   )
      v.                           )    Civil Action No. 3:24CV84 (RCY)
                                   )
THOMAS W. EVELYN, *et al.*,        )
      Defendants.                  )
_____   )

## MEMORANDUM OPINION

Plaintiff Richard D. Stewart brings this action alleging that he was fired from his local government job in retaliation for him exercising his First Amendment rights. He also claims that, in the course of being fired, he was defamed. This case is presently before the Court on a Joint Motion to Dismiss and Partial Motion to Dismiss ("Motion"), ECF No. 9, filed by Defendants Thomas W. Evelyn, C. Thomas Tiller, John N. Lockwood, and Rodney A. Hathaway. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant-in-part and deny-in-part Defendants' Motion.

## I. FACTUAL ALLEGATIONS

Stewart began working for New Kent County ("the County") as the Department Head of General Services on July 12, 2020. Compl. ¶ 10, ECF No. 1. In that role, Stewart's supervisor was Defendant Hathaway, who was the County Administrator. *Id.*

Hathaway, as the County Administrator, was assigned the authority to maintain a "Personnel Administration System" by the New Kent County Board of Supervisors. *Id.* ¶ 12. This authority includes the ability to adopt certain personnel policies, including the right to "in any

manner deal with personnel matters concerning employees of all departments and agencies under the County Administrator's control." *Id.* ¶ 13.  The County Administrator is supervised by, and reports to, the New Kent County Board of Supervisors.  *Id.* ¶ 12.

On May 16, 2023, Stewart met with his supervisor Hathaway for their monthly meeting. *Id.* ¶ 14.  There, Stewart told Hathaway that Stewart's daughter, Jordan Stewart ("Jordan"), intended to run for a seat on the Board of Supervisors.  *Id.*  Stewart asked Hathaway whether Jordan's run for a contested position on the Board of Supervisors would pose any concerns or conflict of interest vis-à-vis Stewart's employment or otherwise risk Stewart's employment with the County.  *Id.* ¶ 15.  Stewart also asked Hathaway if Stewart could, outside of his work, openly support Jordan's bid for a Board seat.  *Id.* ¶ 16.  Hathaway told Stewart that Jordan's run and Stewart's support of her would not cause any problems, create any conflict of interest, or otherwise threaten Stewart's position or continued employment with the County.  *Id.* ¶ 17.  Stewart informed Hathaway that Jordan would be running for the Fifth District seat, against Defendant Lockwood. *Id.* ¶ 19.  Stewart ended the meeting by asking Hathaway whether there was anything Hathaway would like to see more of or less of from Stewart or General Services, generally.  *Id.* ¶ 21. Hathaway answered "no," and told Stewart, "You are doing a really good job, and I am happy with how and where things are headed."  *Id.*

Stewart also had multiple conversations with Ron Stiers, County Board Member for the Fourth District, asking Stiers the same questions Stewart did Hathaway.  *Id.* ¶ 23.  Stiers said he knew of no issues when asked whether there would be any problems with Stewart's employment in light of Jordan's run for a Board seat and Stewart's support of her campaign.  *Id.*

Based on Hathaway's assurances, which were "redoubled" by Stewart's conversation with Stiers, Stewart began his association with Jordan's political campaign.  *Id.* ¶¶ 22, 24.  Jordan

publicly announced her candidacy for the Fifth District seat on or about June 1, 2023.  *Id.* ¶ 25.  It was to be a contested race against the incumbent, Lockwood.  *Id.*  Stewart's association with Jordan's campaign involved words, actions, and direct association with Jordan, during a months-long campaign; Stewart participated in campaign work when he was not engaged in his full-time County position.  *Id.* ¶ 26.  For example, Stewart's efforts on behalf of Jordan's campaign included setting out campaign signs, handing out campaign pamphlets, providing financial support, and attending campaign meetings.  *Id.* ¶ 27.  During the election period, Stewart did not receive any negative comments or negative feedback from Hathaway or others associated with his employment at the County, neither about his political activities supporting Jordan's campaign or about his work performance for the County more generally.  *Id.* ¶ 28.  Election day was on November 7, 2023, and Jordan defeated Lockwood for the Fifth District seat, with Jordan's term set to begin on January 1, 2024.  *Id.* ¶ 30.

On November 13, 2023, Stewart was called to Hathaway's office.  *Id.* ¶ 31.  When Stewart arrived, he saw County Sheriff Joseph J. McLaughlin, Jr. ("Sheriff McLaughlin") sitting in the waiting area, which Stewart found unusual.  *Id.* ¶ 32.  Hathaway invited Stewart into his office, Stewart entered, and Hathaway shut the door.  *Id.* ¶ 33.

Hathaway told Stewart that "the Board" had ordered Hathaway to terminate Stewart's employment.  *Id.* ¶ 34.  Hathaway stated that he did not want to fire Stewart, but Hathaway believed that if he did not, *he* would be fired.  *Id.* ¶ 35.  Hathaway said that "the Board [] asked him to set up the meeting and . . . terminat[e] Stewart while they were all out of town" at a conference.  *Id.* ¶ 36.

Stewart asked Hathaway for an explanation, so Stewart could understand "why he was being suspended/terminated by the Board."  *Id.* ¶ 37.  Hathaway said that the Board had received

complaints about Stewart.  *Id.* ¶ 38.  Those were:  (1) "that a Beth Trivette claimed Stewart stated that the [County's] fire chief . . . would be the first one fired if Jordan won the election,"[1] and (2) that "Evelyn" (Board Chairman and Member representing District One) "brought up a property dispute between Stewart's family and the family of Raymond Krause," who is a business associate of, and readily performs work for, Evelyn.[2]  *Id.* ¶¶ 39, 41–42.

Given that Jordan's election victory came just six days prior, Stewart told Hathaway he believed that "the actions of the Board [] of terminating him were retaliatory for his work on behalf of Jordan's campaign" and Jordan's victory.  *Id.* ¶ 45.  Hathaway nodded his head in agreement. *Id.* ¶ 46.  Stewart asked Hathaway if Stewart would have a chance to clear his name as to the two claims Hathaway mentioned, and Hathaway responded, "No."  *Id.* ¶ 47–48.

Hathaway then handed Stewart a letter dated November 13, 2023, titled, "Re: Notice of Suspension."  *Id.* ¶ 49; Compl. Ex. A, ECF No. 1-2 ("November 13 Suspension Letter").[3]  The letter was addressed to Stewart, "via hand delivery," and read:

Dear Mr. Stewart:

In accordance with Section 4.31 of the New Kent County Personnel Policies and Procedures Manual, you are hereby advised that effective immediately you are placed on suspension until the close of business on Wednesday, November 15, 2023.  During this suspension period you are placed on administrative leave with pay.  You must leave the premises and have no contact with your staff.  All property in your possession that is owned by the County must be returned to the County immediately.  The objective of this suspension period is to conduct an investigation on various complaints received by the New Kent County Board of Supervisors regarding unprofessional conduct and to determine if termination is the proper decision.

---

[1] According to the Complaint, "[t]his allegation was false."  *Id.* ¶ 40.

[2] "Krause is also Stewart's wife's estranged brother, and they were involved in a property dispute stemming from the bequeath of their mother's home in which their mother divided her home in equal shares to both Stewart's wife and Krause. . . . Jordan is the executor of her grandmother's estate."  *Id.* ¶ 43.

[3] At the motion to dismiss stage, a court "may consider documents attached to the complaint."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing Fed. R. Civ. P. 10(c)).

I will notify you by the close of business on Wednesday, November 15th regarding the outcome of my investigation and decision.

Sincerely,

Rodney A. Hathaway
County Administrator

Nov. 13 Suspension Letter.

Hathaway told Stewart that "the Board [] would continue to pay [Stewart] until the end of January as well as continue his benefits only if Stewart would sign a letter that the county attorney was preparing stating that Stewart was resigning from his employment with New Kent County." Compl. ¶ 50.  Hathaway offered to write Stewart a letter of recommendation if Stewart signed a resignation document.  *Id.*  Stewart declined the offer, stating that he believed the termination was retaliatory and politically motivated, because of Jordan's successful campaign and because Stewart's work performance had been satisfactory.  *Id.*  ¶ 51.  Hathaway said, "You have done a really good job here and I am sorry."  *Id.* ¶ 52.  Hathaway rejected Stewart's request to drive his county truck to bring home his personal items, and Sheriff McLaughlin escorted Stewart home. *Id.* ¶¶ 53–54.  On November 14, 2023, Hathaway emailed at least one employee in Stewart's office, informing them of Stewart's suspension and naming an interim head of General Services, adding that it was "unlikely that [Stewart] w[ould] be returning."  *Id.* ¶ 55; Compl. Ex. B, ECF No. 1-3.

On November 15, 2023, Stewart retained counsel, and by counsel submitted a FOIA request to the Count Attorney seeking "the details of the Board [] meeting regarding it[s] actions against Stewart including the meeting location, notices[,] and board members who were present that le[d] to the County Administrator taking action to suspend Stewart."  *Id.* ¶ 56.  Stewart's counsel also set out Stewart's position that the employment actions were a violation of Stewart's First Amendment rights.  *Id.*  The County Attorney eventually informed Stewart's counsel on

November 28, 2023, that "the County's position is that no such records" responsive to Stewart's request "exist." *Id.* ¶ 68.

The November 15 deadline stated in the Suspension Letter came and went, without any contact from Hathaway to Stewart. *Id.* 58. As a result, Stewart returned to work on November 16. *Id.* ¶ 59. Stewart called Hathaway, and Hathaway explained that "the Board [] met in closed session on the evening of November 15, 2023, and decided to terminate Stewart's employment effective immediately." *Id.* ¶ 60. Hathaway told Stewart there was an option for Stewart to resign and be paid in full until the end of January 2024 if Stewart would not sue the County. *Id.* Hathaway and Stewart then met in person, where Hathaway stated that "his own job security ha[d] been threatened during th[e] process by Board [] members" and expressed that he would have advised Stewart differently about supporting Jordan's campaign if Hathaway thought it posed a risk of retaliation. *Id.* ¶ 61. Hathaway told Stewart that Stiers fought against the decision to terminate Stewart and "had urged the Board [] not to go through with it." *Id.* Hathaway expressed sadness and stated that "he was ashamed by the Board's action[s]" and reiterated that Stewart's performance in his role "ha[d] been great." *Id.* ¶¶ 64–65. Hathaway stated he would say as much if called upon to testify. *Id.* ¶ 65.

Hathaway then handed Stewart his termination letter, dated November 16, 2023, again addressed to Stewart and to be made "via hand delivery." *Id.* ¶ 66; Compl. Ex. C, ECF No. 1-4 ("November 16 Termination Letter"). The letter read:

> Dear Mr. Stewart:
>
> Upon my completion of my investigation into various complaints received by my office and the Board of Supervisors regarding unprofessional conduct, it is my finding that termination is appropriate. Therefore, this letter is to inform you that your employment with New Kent County is hereby terminated effective immediately.

Please contact the County's Human Resources department . . . to discuss your final pay and benefits options.

Sincerely,

Rodney Hathaway
County Administrator

cc:  Human Resources

Nov. 16 Termination Letter.

On November 20, 2023, Hathaway called Stewart to ask if Stewart would resign if  "the Board [] agreed to extend payment and insurance for him until the end of March 2024," rather than the original offer of until the end of January 2024.  Compl. ¶ 67.  Hathaway stated that the County Attorney could withdraw the termination paperwork.  *Id.*  Stewart declined the offer.  *Id.*

On December 19, 2023, Jordan attended orientation for the newly elected members of the Board.  *Id.* ¶ 69.  There, Hathaway stated to Jordan that "Evelyn led the effort to terminate[] Stewart . . . because Jordan appeared to be aligned with Evelyn's opponent" in Evelyn's race for the First District seat of the Board, and because of "the family issue" between Stewart and Krause.  *Id.* ¶¶ 69–70.  Hathaway stated that "Evelyn['s] demand to remove Stewart was retaliatory and in retribution for Stewart's support of Jordan," and that Hathaway terminated Stewart because "he was carrying out an instruction from Evelyn."  *Id.* ¶ 70.

## II.  RELEVANT PROCEDURAL BACKGROUND

Stewart initiated this action on February 6, 2024.  *See generally* Compl.  He levels two counts:  Count I, a 42 U.S.C. § 1983 claim alleging a violation of his First Amendment speech and association rights against all Defendants "in their individual and supervisory capacities," Compl. ¶¶ 76–80; and Count II, a defamation claim under Virginia law, *id.* ¶¶ 81–93.

On March 1, 2024, Evelyn, Hathaway, Lockwood, and Tiller filed the instant Motion, ECF No. 9, and a Joint Brief in Support, ECF No. 10 ("Mem. Supp.").  On March 15, 2024, Stewart

filed his Memorandum in Opposition, ECF No. 14 ("Pl.'s Resp."), and on March 21, 2024, Evelyn, Hathaway, Lockwood, and Tiller filed a Reply.  ECF No. 15 ("Reply").

### III.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint."  *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case."  5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1356 (4th ed. 2024).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.*  The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor.  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* "Ultimately, on a Rule 12(b)(6) motion, the burden lies with the movant to show entitlement to dismissal." *Ziegler v. Dunn*, 2024 WL 761860, at *2 (E.D. Va. Feb. 23, 2024) (citing Wright, Miller, & Spencer, *supra*, § 1357).

## IV.  DISCUSSION

Defendants move to dismiss Count I in part and Count II in full.  The Court assesses each count in turn.

### A.  Count I — § 1983 First Amendment Retaliation Claim

The Court first considers the sufficiency of Count I, Stewart's 42 U.S.C. § 1983[4] claim alleging a violation of his First Amendment[5] free speech and association rights.  "A state official can be in a § 1983 suit in three ways: in his personal[/individual] capacity, his official capacity, or in a more limited way, his supervisory capacity." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016).  Here, Stewart brings his claims against all Defendants "in their individual and supervisory capacities."  Compl. ¶¶ 77–78.

Defendants contend that Count I should be dismissed (1) as to all Defendants to the extent it alleges a claim in their "supervisory capacities," and (2) as to Tiller and Lockwood to the extent it alleges a claim against them in their "individual capacities."  *See* Mem. Supp. 1–2.  The Court

---

[4] "Every person who, under color of any [law,] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . ."  42 U.S.C. § 1983.

[5] "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.

first considers Stewart's "supervisory capacity" claims before turning to his "individual capacity" claims.

     1.  <u>Supervisory Capacity Claims</u>

"It is well-settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). "Such liability is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). There are "three elements necessary to establish supervisory liability under § 1983." *Shaw*, 13 F.3d at 799. "[A] supervisor can be liable" under § 1983 where "(1) he knew that his subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury'; (2) his response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) . . . there was an 'affirmative causal link' between his inaction and the constitutional injury." *King*, 825 F.3d at 224 (quoting *Shaw*, 13 F.3d at 799). The issue of supervisory liability "is ordinarily one of fact, not law." *Shaw*, 13 F.3d at 799.

There is no clear definition under Fourth Circuit precedent of what constitutes a "supervisor" for purposes of § 1983 supervisory capacity claims. The Fourth Circuit recognizes that "supervisory liability can extend 'to the highest levels of state government,'" but that it is "ultimately . . . determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw*, 13 F.3d at 799 (quoting *Slakan*, 737 F.2d at 376); *see also Timpson v. Anderson Cnty. Disabilities & Special*

*Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) ("Public administrators (such as the individual Defendants [including the Executive Director of the Anderson County Disabilities and Special Needs Board] here) may be liable in their . . . supervisory actions that violated constitutional norms."); *Spell v. McDaniel*, 591 F. Supp. 1090, 1109–10 (E.D.N.C. 1984) (noting that in cases of supervisory liability, "supervisory officials cannot be held liable on the basis of their employer-employee relationship," but rather "liability attaches when their own action or inaction amounts to gross negligence or deliberate indifference and is the proximate cause of the constitutional violation"). Thus, although the term "supervisor" is not clearly defined in the context of a § 1983 supervisory capacity claim, what is clear is that a supervisory capacity claim is "personal," and the complaint requires "specific allegations of each individuals' conduct and state of mind." *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (1937)).

Defendants argue that Stewart fails to state a supervisory capacity claim, because Stewart fails to advance any factual allegations against any of Defendants' subordinates. *See* Mem. Supp. 5–6. The Court first addresses the supervisory capacity claim for Defendant Hathaway before turning to Defendants Lockwood, Evelyn, and Tiller.

> *a. Hathaway*

With respect to Hathaway, Defendants argue that Stewart does not allege any facts supporting his § 1983 claim that "relate to a *subordinate* of Hathaway's," there are only facts as to "Hathaway *himself*." *See id.* Stewart does not respond to Defendants' arguments about Hathaway. *See* Pl.'s Resp. 6–8.

With respect to Hathaway, the Court sees no allegations in the Complaint that suggest that one of Hathaway's subordinates violated Stewart's rights. *See generally* Compl. The only

subordinate of Hathaway's mentioned in Stewart's Complaint is Stewart himself.  *See id.* ¶¶ 7, 10, 14.  As a result, there can be no plausible supervisory capacity claim against Defendant Hathaway.

### b. Tiller, Lockwood, and Evelyn

As to Tiller, Lockwood, and Evelyn, all individual Board members, the Defendants argue that none of them can be liable in a "supervisory" capacity for Hathaway's actions, because the Board itself is Hathaway's supervisor, rather than any specific Board member.  *See* Mem. Supp. 5–6.  In other words, the argument is that the Board is the only entity that can control Hathaway's actions, not Tiller, Lockwood, or Evelyn, as individuals.  *See id.*  In doing so, Defendants rely on two cases, *Stewart v. Nottoway*, 684 F. Supp. 3d 467 (E.D. Va. 2023), and *Smith-Hosch v. Bramble*, 2019 WL 4060017 (D. Md. Aug. 28, 2019).  *Smith-Hosch* describes individual board member liability in a § 1983 action more generally, while *Stewart* addresses board member liability in a personal-capacity and official-capacity context.  *See generally Stewart*, 648 F. Supp. 3d 467 (finding that the Eleventh Amendment barred the plaintiff's claim against the board and against the board members in their official and personal capacity); *Smith-Hosch*, 2019 WL 4060017 (determining that individual school board members can be held liable for board actions in certain circumstances under § 1983).  However, neither case specifically addresses board member liability in a §1983 supervisory capacity context.  *Id.*

Stewart responds to Defendants' arguments about Tiller, Lockwood, and Evelyn by arguing that "[t]he Complaint sufficiently alleges that each of the[m] participated in and personally engaged in conduct that caused their subordinate [Hathaway] to fire [Stewart], which is sufficient to plead a violation of supervisory liability under § 1983."[6]  *Id.* at 8.  Plaintiff further argues that

---

[6] Because Defendants only challenge whether they can be properly classified as "supervisors," the Court does not address whether the remaining elements of a supervisory liability claim are met.  *See Ziegler v. Dunn*, 2024 WL 761860, at *2 (E.D. Va. Feb. 23, 2024) ("Ultimately, on a Rule 12(b)(6) motion, the burden lies with the movant to show entitlement to dismissal." (citing Wright, Miller, & Spencer, *supra*, § 1357)).

even though "personnel matters" had been delegated to Hathaway, this did not relieve the Board of their duties of their office, under Va. Code Ann. § 15.2-1502(D), as being ultimately responsible for "personnel matters."  Pl.'s Resp. 8. [7]  Ultimately, the Court agrees.

Defendants' argument rests on the assertion that Tiller, Lockwood, and Evelyn are not Hathaway's supervisors and that instead, the proper supervisor is the Board.  The Court is not convinced.  Supervisory liability is "personal" and individuals in the "decision making chain" may be "pinpointed" when their conduct "permitted constitutional abuses."  *Shaw*, 13 F.3d at 799.  Tiller, Evelyn, and Lockwood appear to be a part of the "decision making chain," not only as members of the Board, but also in directing Hathaway to fire Stewart.  Compl. ¶¶ 34, 36, 60–61, 73.  Further, the Complaint alleges that "[t]he County Administrator is supervised by and reports to the New Kent County Board of Supervisors."  Compl. ¶ 12.  Later, the Complaint also says that Defendants Evelyn, Tiller, and Lockwood, "as *members* of the New Kent County Board of Supervisors[,] were the supervisors of the New Kent County Administrator Rodney A. Hathway." *Id.* ¶ 73 (emphasis added).  So, to the extent Defendants assert that Stewart "has not advanced any allegations regarding a subordinate of" Tiller, Lockwood, and Evelyn, *see* Mem. Supp. 6, that assertion appears technically incorrect.

Viewing the Complaint in the light most favorable to Stewart, the Court believes it reasonable to draw the inference in Stewart's favor that Tiller, Lockwood, and Evelyn could be considered Hathaway's "supervisors" for purposes of a § 1983 supervisory capacity claim.  Despite Defendants' argument that "an individual Board member's liability can only be based on that which the individual has the capacity to independently do," *id.*, the broad "definition" of

---

[7] Defendants respond that the Board of Supervisors is not an "officer" of New Kent County and instead is a governing body, suggesting that no duty is owed to Stewart.  Reply 5.  While the Board of Supervisors is deemed to be a "policy-determining body," Va. Code Ann. § 15.2-403, the members of the Board do appear to be officers.  *See* Va. Code Ann. § 15.2-1522 (when and how officers qualify).

"supervisor" under Fourth Circuit case law convinces the Court that it should not dismiss based on Defendants' narrow argument that Tiller, Evelyn, or Lockwood are not Hathaway's "supervisors."

However, there remains a question about whether Plaintiff sufficiently alleges "specific allegations of each individual's conduct and state of mind." *King*, 76 F.4th at 269.  Stewart's Complaint details the specific actions Defendant Evelyn undertook to fire Stewart.  Compl. ¶¶ 69–71.  Namely, that Evelyn led the effort to fire Stewart and that the motive behind the termination was to protect Evelyn's position and as retaliation for Stewart's support of Jordan. *See id.*  This is sufficient to render Plaintiff's supervisory capacity claim against Evelyn plausible; the Court will accordingly deny Defendants' Motion to Dismiss in that regard.

The Court cannot say the same for Defendants Lockwood and Tiller.  The Complaint only makes one specific statement regarding Lockwood and Tiller; even that is conclusory, with no specific conduct alleged. *Id.* ¶ 73 ("Tiller . . . and Lockwood, while acting under color of state law in their supervisory capacities . . . are liable to Stewart for Hathaway's intentional, willful and retaliatory acts . . . because they ordered and knew and had actual or constructive knowledge that Hathaway was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury . . . .").  Throughout the Complaint, Stewart refers to the Board, which necessarily includes Defendants Lockwood and Tiller, but Stewart does not include allegations of specific actions or "conduct" by Lockwood or Tiller, or their "state of mind."  A supervisory capacity claim under § 1983 requires more, even at this stage.  Thus, the Court will grant the Motion to Dismiss as to Plaintiff's § 1983 supervisory capacity claims against Lockwood and Tiller.

2.  <u>Individual Capacity Claim</u>

"For personal[/individual] liability, 'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *King*, 825 F.3d at 223 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). An individual capacity § 1983 suit requires proof of "direct culpability in causing the injury" inflicted. *See McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996) (citing *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 692–94 (1978)); *see also Octave v. Wade*, 2017 WL 465467, at *3 (E.D. Va. Feb. 3, 2017) ("Liability under 42 U.S.C. § 1983 . . . requires individual involvement in the constitutional wrongs alleged in the complaint . . . . [T]he culpability of one government official does not infect his or her colleagues by osmosis. Rather, a plaintiff must show some constitutionally wrongful action by each defendant he sues." (citing *McWilliams*, 72 F.3d at 1197)).

Defendants challenge only the individual capacity claims against Tiller and Lockwood, on the grounds that the Complaint "makes no allegations regarding individual actions taken by either [of them]." Mem. Supp. 7. Plaintiff contends that the Complaint sufficiently implicates Tiller and Lockwood since the Complaint singles out Stiers as the only board member "who did not participate" in the "order to fire the Plaintiff." Pl.'s Resp 9. Stewart relies on *Craig v. Bedford Cnty.*, 2018 WL 3130439 (W.D. Va. June 26, 2018), and *Morrison v. Fly*, 2014 WL 1572050 (E.D. Va. Apr. 18, 2014), drawing comparisons to instances where board members were found to have "actively participated" in an employee's termination or were alleged to have participated in a "scheme." *Id.* at 9–11.

As Defense Counsel correctly notes, *Craig* includes specific allegations for each defendant on top of the mere fact of their membership on the board. In contrast, the present Complaint does not provide specific or personalized allegations of Lockwood's or Tiller's conduct beyond their

15

membership on the Board and the inference that they did not abstain from discussing or voting on Stewart's termination.  Compl. ¶ 61.  Stewart claims that Stiers is the only board member who did not "participate" in the vote on whether to fire Stewart, but the Complaint does not allege specific actions taken or comments made by Defendants Lockwood or Tiller during the vote.  *Id.*; *see generally* Compl.  Even when viewing the Complaint in the light most favorable to Plaintiff, the Court cannot find allegations to support a plausible inference that Tiller or Lockwood were directly culpable.  As a result, there is no individual capacity claim against Defendants Lockwood or Tiller absent such allegations of "direct culpability."

As such, the Court will dismiss Plaintiff's individual capacity claims against Tiller and Lockwood.

## B.  Count II — Defamation Claim

The Court turns to Count II, Stewart's defamation claim.  Under Virginia state law,[8] a claim for defamation must allege the "(1) publication of (2) an actionable statement with (3) the requisite intent."  *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)).  For "publication" to occur there must be an actionable statement that is transmitted "to some third person so as to be heard and understood by such person."  *Thalhimer Bros. v. Shaw*, 159 S.E. 87, 88 (Va. 1931).  An actionable statement is one that is "both false and defamatory."  *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).  Stewart further alleges that the statements underpinning his claim are defamatory *per se*, meaning the statements (1) impute a "criminal offense involving moral turpitude" on a party so that they may be indicted and punished, (2) impute "that a person is infected with some contagious disease" that would exclude them from

---

[8] In claims arising out of supplemental jurisdiction, district courts apply federal procedural law and forum state substantive law.  *E.g.*, *Stover v. Coll. of William & Mary*, 635 F. Supp. 3d 429, 445 (E.D. Va. 2022) (collecting cases).

society, (3) impute "an unfitness or lack of integrity" that is required to "perform official or professional duties," or (4) "prejudice a person in his or her profession or trade." *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 635 (E.D. Va. 2009) (quoting *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 591 (Va. 1954)).

Stewart's claim wholly hinges on two letters: (1) the November 13 Suspension Letter, and (2) the November 16 Termination Letter. Compl. ¶¶ 81–93. Defendants' attack on Stewart's claim is three-fold. First, Defendants argue that the Complaint fails to allege facts that support the conclusion that either letter was published. Mem. Supp. 8–9. Second, Defendants argue that neither of the letters contain any statements that are actionable. *Id.* at 9–10. Third, failing those, Defendants say that Stewart identifies no statements regarding Stewart made by Tiller, Lockwood, or Evelyn (because the letters were both signed by Hathaway), and so Count II should at the least be dismissed as to them. *Id.* For the reasons that follow, the Court is persuaded that Plaintiff's allegations surrounding the November 13 letter fail to state a claim for defamation, but the same cannot be said for the November 16 letter.

    1.  <u>November 13 Suspension Letter</u>

The Court is persuaded that Stewart's defamation claim, as it relates to the November 13 Suspension Letter, falls at the first hurdle. Stewart has failed to plausibly allege that this letter was ever published.

"Publication" occurs when an actionable statement is transmitted "to some third person so as to be heard and understood by such person." *Thalhimer Bros.*, 159 S.E. at 88. "The mere mailing or transmission of a letter to the plaintiff himself does not constitute a publication in a civil action and at common law, as the sender is not responsible for what the recipient does with the letter after it is received." *Davis v. Heflin*, 107 S.E. 673, 674 (Va. 1921).

The Complaint includes no allegations that the November 13 Suspension Letter was sent to anyone other than Stewart himself.  *See generally* Compl.  The Complaint alleges that the "November 13, 2023[] suspension letter and the[] November 16, 2023[] termination letter were published by the Defendants to third parties as well as to Stewart."  *Id.* ¶ 86.  But no facts alleged back that up; as Defendants contend, this appears to merely be a "[t]hreadbare recital[] of the elements of [this] cause of action, supported by mere conclusory statements," which will not suffice to defeat a Rule 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678; *cf.* Mem. Supp. 8–9.

In his brief, Stewart raises a host of arguments to contend there was publication, but these arguments fail to address the key issue.  Stewart says that Tiller, Lockwood, Evelyn, and Hathaway all "shared [the] allegations" in the November 13 Suspension Letter "with each other under circumstances that County employees would reasonable learn of these false statements."  Pl.'s Resp. 14–15.  Stewart also argues that paragraph 55 of the Complaint "states that Hathaway e-mailed employees in the General Services offices telling them that [Stewart] was suspended and was not expected back."  Pl.'s Resp. 15.  But, Stewart's defamation claim is not based on what Tiller, Lockwood, Evelyn, and Hathaway said to one another, nor is his claim based on Hathaway's email to General Services employees.  Stewart's defamation claim is based on the two letters, *see* Compl. ¶¶ 81–93, and neither of the arguments recited above support the conclusion that the November 13 Suspension Letter *itself* was shared to anyone other than Stewart.[9]  Further, neither the Complaint nor Plaintiff's Memorandum in Opposition provide any basis to support Plaintiff's assertion that Defendants published their defamatory statements to third parties.  *See generally*

_____

[9] Stewart also points the Court to *Boswells Towing, Inc. v. Shantir*, 2020 WL 13605322 (E.D. Va. Mar. 2, 2020), to argue that the Court should "readily infer[] that the Defendants published their defamatory statements with third parties."  Pl.'s Resp. 15.  But *Boswells Towing* is factually inapposite for the reasons Defendants state, *see* Reply 2, and is a case involving the application of Maryland's defamation law, not Virginia's, *see Boswells Towing*, 2020 WL 13605322, at *3–5.

Compl.; Pl.'s Resp.  Plaintiff simply argues that publication can "be readily inferred" based on the how the statements were made and how the "persons included in such allegations acted on this information."  Pl.'s Resp. 15.  That is insufficient to carry the day.

Defendant's Motion will therefore be granted to the extent it rests on the November 13 Suspension Letter.

> 2.  <u>November 16 Termination Letter</u>

The November 16 Termination Letter is differently situated from the November 13 Suspension Letter.  The Court addresses each of the Defendants' arguments as to the claim's deficiencies in turn.

> *a. Publication*

First, the Court finds that Plaintiff's Complaint sufficiently alleges that the November 16 Termination Letter was published.  Though neither party mentions it, the November 16 Termination Letter includes at the bottom:  "cc: Human Resources."  *See* Nov. 16 Termination Letter.  With no contrary argument from Defendants, the Court believes it reasonable to draw the inference in Stewart's favor at this procedural posture that this copied party received and opened the letter, sufficient to support publication as to them.  *See Davis*, 107 S.E. at 674 (mailing of a defamatory letter to a third party amounts to publication "provided the letter reaches its destination and is read by the addressee, or any other third party").  Because Defendants fail to argue that disseminating the letter to the County's Human Resources department (not a defendant in this action) does not constitute publication, Defendants have not met their burden to show entitlement to dismissal on the publication element.[10]

---

[10] Under Virginia law, publications that are privileged cannot support a defamation claim.  *See Montgomery Ward & Co. v. Nance*, 182 S.E. 264, 270 (Va. 1935); *see also Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 201 (E.D. Va. 2010) (viewing this as part of the publication element); *cf. Cobb v. Rector & Visitors of Univ. of Va.*, 84 F. Supp. 2d 740, 750 (W.D. Va. 2000) (essentially same).  "Communications between persons on a subject in which the persons

### b. Actionability

The analysis thus turns to actionability. An actionable statement is one that is "both false and defamatory." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). "[S]tatements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false." *Id.* "Whether an alleged defamatory statement is one of fact or opinion is a question of law and is, therefore, properly decided by a court instead of a jury." *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 858, 861 (Va. 2003). When determining whether a statement is one of fact or opinion, "a court may not isolate one portion of the statement at issue from another portion of the statement," but instead must look at the statement in its entirety. *Handberg v. Goldberg*, 831 S.E.2d 700, 707 (Va. 2019). In fact, a plaintiff may bring an action for defamation for any inference, implication, or insinuation that could reasonably be drawn from every statement of fact. *Id.*

While "criticism of [a] plaintiff's job performance or manner," even if damaging, does not "necessarily constitute actionable defamation," certain statements can be construed to imply that an individual lacks "integrity or is unfit for [their] profession." *Echtenkamp v. Loudon Cnty. Public Schools*, 263 F. Supp. 2d 1043, 1063–64 (E.D. Va. 2003). For example, the Court in *Echtenkamp* found the following statements alleged in the plaintiff's complaint were enough to allege

---

have an interest or duty" enjoy a qualified privilege. *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000); *see also Isle of Wight Cnty. v. Nogiec*, 704 S.E.2d 83, 88 (Va. 2011) ("In the law of defamation, there are two types of privileges—absolute and qualified.").

The Virginia Supreme Court has "applied the doctrine of qualified privilege in a number of cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore*, 528 S.E.2d at 121. Qualified privilege "may be defeated if the plaintiff proves that the defamatory statement was made maliciously, but "employment matters are occasions of privilege in which the absence of malice is presumed." *Id.* at 121–22. But the burden to assert that a publication enjoys a privilege rests with the defendant. *See* Restatement (Second) of Torts § 613(2) (1977), *cited in Givago Growth, LLC v. iTech AG, LLC*, 3863 S.E.2d 684, 687 (Va. 2021); *see also* Restatement (Second) of Torts § 613 cmts. d, g, i. Only after the defendant shows entitlement to qualified privilege is "the onus . . . cast upon the person claiming to have been defamed to prove the existence of malice." *Nogiec*, 704 S.E.2d at 88 (quoting *Story v. Norfolk–Portsmouth Newspapers, Inc.*, 118 S.E.2d 668, 670 (Va. 1961)); *see also* Restatement (Second) of Torts § 613(1)(h), cmt. g. Because Defendants do not raise issues of privilege, *see generally* Mem. Supp., the publication of the November 16 Termination Letter to the County's Human Resources department can support Stewart's defamation claim at this posture.

20

defamation *per se*: "plaintiff was abrasive, unprofessional, and rude . . ." and "plaintiff's behavior is unprofessional and in need of corrective action." *Id.* at 1064. Relatedly, courts have also found that falsely stating a plaintiff is "under investigation" is actionable defamation. *Grover Gaming, Inc. v. Huffman*, WL 8936349, at *3–6 (W.D. Va. Dec. 27, 2023); *see also Mann*, 639 F. Supp. 2d at 635 (finding the false implication that Mann was the subject of an investigation *would* have been defamatory *per se* had the email *also* implied the subject of the investigation: defrauding the government).

Defendants argue that the November 16 Termination Letter is not actionable because an investigation was conducted, and the term "unprofessional conduct" was merely Defendant Hathaway's opinion. In doing so, Defendants rely heavily on *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 860 (Va. 2003). Defense counsel points out that when the plaintiffs in *Fuste* were described as "unprofessional" and "uncooperative" to credentialing officials, the court determined that those comments were "dependent on the speaker's viewpoint" and were therefore opinions, not fact. Mem. Supp. 10 (citing *Fuste*, 575 S.E.2d at 860, 862).

In response, Stewart identifies two components of the November 16 Termination Letter that constitute false and defamatory information, rather than opinion: (1) the existence of an investigation, and (2) the supposed reason for his termination—"unprofessional conduct." Pl.'s Resp. 12–14. Plaintiff argues that the "investigation" and reason given for his termination were pretext, that the real reason Plaintiff was fired was in retaliation for his support of his daughter, Jordan, and that Defendants never conducted an investigation. *Id.*; Compl. ¶¶ 45–48, 58, 61, 69–71.

The Court agrees that these statements are actionable. What Stewart alleges is distinct from the allegations in *Fuste*. There, the defendants simply described the plaintiffs to third parties,

including credentialing agencies, as "unprofessional." *Fuste*, 575 S.E.2d at 860. Here, the November 16 Termination Letter states that Stewart was terminated as a result of the "investigation" into Stewart's "unprofessional conduct." *See* Nov. 16 Termination Letter. Viewing the Complaint in the light most favorable to Plaintiff, the term "unprofessional conduct" is not Defendant Hathaway stating an opinion; rather, it is presented as fact and as the "reason" Stewart was terminated. Moreover, taking the remainder of the facts alleged in the Complaint as true—i.e., that an investigation was not actually conducted, and that this charge of unprofessionalism was simply pretext—the claim of an investigation and the resulting purported "reason" for termination are both rendered false, in turn rendering the statements actionable. *Accord Grover Gaming*, WL 8936349, at *3–6; *Mann*, 639 F. Supp. 2d at 635.

### c. Tiller, Lockwood & Evelyn

Finally, the Court is persuaded that Defendants Tiller, Lockwood, and Evelyn could be liable for defamation even if they did not personally "write or sign [the] letters. Reply 4. Indeed, "defendant[s] need not be the original author[s] of the published material to be legally liable" so long as the defamatory material was communicated "intentionally or negligently." Peter Nash Swisher et al., *Virginia Tort and Personal Injury Law* § 12:3 (2024) (citing Restatement (Second) of Torts § 577(1) (Am. L. Inst., 2024)); *see also Weaver v. Beneficial Fin. Co.*, 98 S.E.2d 687, 690 (Va. 1957) ("It is well settled that the author or originator of a defamation is liable . . . provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication.").

Stewart has sufficiently alleged that Defendants directed Hathaway to publish the November 16 Termination Letter. Compl. ¶¶ 60–61, 64, 69–71. Specifically, the Complaint asserts that the Board directed Hathaway to fire Stewart, and that Hathaway's position was in jeopardy if

he did not comply.  *Id.*  It is also clear that the "finding" of unprofessional conduct, which led to Stewart's termination in the November 16 Termination Letter, came from the Board.  *Id.* ¶¶ 38–43.  Although it is possible that Defendants Lockwood, Tiller, and Evelyn are not the actual authors of the November 16 Termination Letter, it is a clearly reasonable inference, based on the allegations in the Complaint, that they intended, and in fact directed, the letter to be communicated.

For the reasons stated above, Count II, as it relates to the November 16 Termination Letter, survives Defendants' 12(b)(6) motion.

## V.  LEAVE TO AMEND

Courts will "freely give" a party leave to amend their complaint "when justice so requires." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Federal Rule of Civil Procedure 15(a)(2) is a "liberal rule" that favors "resolving cases on their merits instead of disposing of them on technicalities." *Id.*  Courts will only deny leave to amend when it would prove to be prejudicial to the opposing party, "there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.*  Here, Plaintiff previews that he will seek leave to amend, should the Court grant Defendants' Motion to Dismiss.  Pl.'s Resp. 7.  And while the Court generally agrees that, at this early stage of litigation, amendment would not be prejudicial or indicative of bad faith, the Court also agrees with Defendants that the open-ended request for leave to amend, "without any suggestion as to how amendment would resolve the deficiencies in the Complaint," renders the request too amorphous to be granted at this time.  Reply 7.  Consequently, the Court will not blindly grant Plaintiff leave to amend, but it will entertain a motion for leave following issuance of this Memorandum Opinion.

## VI.  CONCLUSION

For the reasons set forth above, the Court will grant-in-part and deny-in-part Defendants' Motion to Dismiss, without prejudice.  The Court will grant Defendant's Motion as to Count I with respect to Defendants Tiller and Lockwood completely, and with respect to Defendant Hathaway in his supervisory capacity only.  The Court will further grant the Motion as to Count II with respect to Plaintiff's claim for defamation based on the November 13 Suspension Letter.

Plaintiff's § 1983 claim in Count I survives against Defendant Evelyn in both his supervisory and personal capacities, and against Defendant Hathaway in his personal capacity only.  Additionally, Plaintiff's defamation claim in Count II survives against all Defendants, based on the November 16 Termination Letter.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Roderick C. Young
United States District Judge

Date: September, 13, 2024
Richmond, Virginia